IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LNV CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-CV-00842-BCW |
| ) | |
| RANDALL L. ROBB, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Plaintiff LNV Corporation's Motion for Summary Judgment (Doc. #41). Having carefully considered Plaintiff's supporting suggestions (Docs. #42, #56, & #75), Defendant's opposing suggestions (Docs. #47 & #74), and the record, the Court finds no genuine issue of material fact remains in dispute and Plaintiff LNV is entitled to judgment as a matter of law. Accordingly, the Court being duly advised of the premises, and for good cause shown, grants Plaintiff's Motion (Doc. #41).

## BACKGROUND

Plaintiff LNV Corporation ("LNV") initiated this action against Defendants Randall L. Robb ("Robb") and Timberland Properties, Inc. ("Timberland") seeking deficiency judgments against Defendants following non-judicial foreclosure proceedings in Missouri. The foreclosures were prompted by defaults on two promissory notes which were secured by deeds of trust on three different land parcels.

On July 8, 1996, Defendant Robb executed a promissory note ("Robb Note") in favor of Columbian Bank and Trust Company ("Columbian") evidencing a loan in the original principal amount of $162,500.00. The Robb Note was modified multiple times, most recently on January 20, 2008. As security for the Robb Note, Robb executed and

1

delivered a deed of trust granting Columbian a lien on certain real property owned by Robb at 7212 N. Prospect in Clay County, Missouri ("Robb Property"). The deed of trust was recorded on July 10, 1996.

On or about December 27, 1996, Defendant Timberland executed a promissory note ("Timberland Note") in favor of Columbian evidencing a loan in an original principal amount of $223,720.85. As security for the Timberland Note, Robb executed and delivered a deed of trust granting Columbian a lien on real property at 6100 N. Oak in Clay County, Missouri ("Timberland Property"). As further security for the Timberland Note, Robb executed and delivered a deed of trust granting Columbian a lien on certain real property at 6101 E. 139th St. in Jackson County, Missouri ("Timberland 2 Property"). Both deeds of trusts were recorded at their respective county Recorder of Deeds offices. The Timberland Note was modified multiple times, most recently on January 20, 2008. To further ensure payment of the Timberland Note, Robb executed a commercial guaranty ("Robb Guaranty") in favor of Columbian promising to pay and to perform Timberland's obligations under the Timberland Note.

The express terms of both the Robb Note and the Timberland Note stated an interest rate of 8.500% and included the following:

> Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment. . . . This payment due on July 20, 2008, will be for all principal and all accrued interest not yet paid. . . . Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. . . . Borrower will be liable for all reasonable costs incurred in the collection of this Note, including . . . attorneys' fees. . . . This Note will be governed by . . . to the extent not preempted by federal law, the laws of the State of Kansas. . . . If real estate taxes for the property securing this note become 30 days delinquent, Lender has the right to pay the taxes due plus all penalties and interest added thereto and increase the note balance by the amount so paid. See Docs. #41-1 & #41-4.

On July 20, 2008, the Robb Note and the Timberland Note matured and all amounts became due and owing. On August 22, 2008, the Kansas State Banking Commissioner closed Columbian and appointed the Federal Deposit Insurance Corporation ("FDIC") as the receiver. See Doc. #80.

On February 27, 2009, the FDIC, as receiver for Columbian, executed an Assignment of Deed of Trust with Future Advances and Future Obligations Governed by Section 443.055 RSMO to LNV Corporation as grantee. The Assignment included the legal description of the Robb Property, "which Deed of Trust secures that certain Promissory Note dated July 8, 1996, in the original principal amount of $162,500.00, executed by Randall L. Robb and payable to the order of Columbian . . . ." See Doc. #41-8. On April 20, 2009, the FDIC, as receiver for Columbian, executed an Assignment of Deed of Trust with Future Advances and Future Obligations Governed by Section 443.055 RSMO to LNV Corporation as grantee. The Assignment included the legal description of the Timberland Property, "which Deed of Trust secures that certain Promissory Note dated December 27, 1996, in the original principal amount of $249,000.00, made by Timberland Properties Inc., executed by Randall L. Robb and payable to the order of [Columbian] . . . ." See Doc. #41-9. On April 20, 2009, the FDIC as receiver for Columbian also executed an Assignment of Deed of Trust with Future Advances and Future Obligations Governed by Section 443.055 RSMO to LNV Corporation as grantee. The Assignment included the legal description of the Timberland 2 Property, "which Deed of Trust secures that certain Promissory Note dated December 27, 1996, in the original principal amount of $249,000.00, made by Timberland

3

Properties, Inc., executed by Randall L. Robb and payable to the order of [Columbian] . . . ." See Doc. #41-10.

On June 17, 2009, LNV sent Robb and Timberland notices of default, invoking the default interest rates as provided in the Notes and increasing the rate to 13.500%. Also on June 17, 2009, Robb and LNV's representative, Dwight Boles, discussed the possibility of LNV delaying foreclosure on the three collateral properties securing the Robb Note and the Timberland Note. Robb later faxed LNV, indicating he hoped to have payment of the debts accomplished by August 21, 2009.

On November 6, 2009, CLMG Corporation ("CLMG"), as the authorized servicer for LNV, emailed Robb a proposed forbearance agreement and draft modification agreements ("Forbearance Documents") to address the defaults on the promissory notes. On January 13, 2010, CLMG sent a letter to Robb, forwarding the Forbearance Documents and giving instructions on signing and returning the documents. Neither Robb nor Timberland ever executed the Forbearance Documents.

On May 6, 2010, Boles emailed Robb details regarding the totals owed under both the Robb Note and the Timberland Note. The payoff details indicated the current balance, legal expenses incurred, late charges, and interest accrued under each promissory note. Under the Robb Note, Robb owed LNV a total of $160,799.00 and under the Timberland Note, Timberland and Robb as guarantor owed LNV a total of $292,131.00.

On May 4, 2010, SMF Services, Inc. ("SMF"), as the successor trustee under the deeds of trust for the three collateral real estate parcels, sent notices of foreclosure sales on the Robb Deed of Trust and the Timberland Deed of Trust. The notices set the foreclosure sales on both the Robb Property and the Timberland Property for May 27, 2010. The notices stated that in addition to the collateral real property, personal property

4

would be sold under Mo. Rev. Stat. § 400.9-604. On May 12, 2010, SMF also sent a notice of foreclosure sale on the Timberland 2 Deed of Trust scheduled for June 1, 2010. The notice stated in addition to the collateral real property, personal property would be sold under Mo. Rev. Stat. § 400.9-604 at the foreclosure sale.

Subsequent to SMF sending these notices of foreclosure sales by certified mail, Defendants and LNV negotiated extensions of the foreclosure sales. LNV agreed to continue each foreclosure sale for one week. On May 27, 2010, an SMF representative appeared at the designated time and place for the foreclosure sales under the Robb Deed of Trust and the Timberland Deed of Trust to announce the foreclosure sales were adjourned until June 2, 2010. On June 1, 2010, an SMF representative appeared at the designated time and place for the foreclosure sale under the Timberland 2 Deed of Trust and announced the foreclosure sale was adjourned until June 7, 2010. Neither Robb nor anyone on his behalf appeared at any of these continuation proceedings.

On June 1, 2010, LNV and Defendants executed three separate Foreclosure Sale Extension Agreements, one corresponding with each pending foreclosure sale ("Robb Extension Agreement," "Timberland Extension Agreement," and "Timberland 2 Extension Agreement"). Under the Robb Extension Agreement, the foreclosure on the Robb Deed of Trust was adjourned until July 1, 2010. Under the Timberland Extension Agreement, the foreclosure sale of the Timberland Property was adjourned until July 1, 2010. Under the Timberland 2 Extension Agreement, the foreclosure sale on the Timberland 2 Property was adjourned to July 6, 2010. SMF recorded each extension agreement with the proper office with proper supporting documentation.

On June 11, 2010, Boles sent a letter to Robb and Timberland outlining the terms under which LNV would agree to forbear collection on the Timberland Note. The

5

conditions were as follows: "[i]n consideration and contingent upon the full payment of the [Robb Note] in the unpaid principal amount of $123,900.07 and accrued interest as of 06/15/2010 totaling $27,455.93, LNV has agreed to forbear [Timberland Note] in the principal amount of $238,623.47 . . . ." The letter further stated forbearance documents would be prepared "upon receipt of a signed copy of this letter." Defendants allege the letter was signed and delivered to CLMG. Plaintiff alleges nobody at CLMG or LNV received a signed copy of the letter triggering preparation of the forbearance documents. Regardless, it is undisputed neither Robb nor Timberland ever made full payment of the principal and interest owing under the Robb Note to satisfy the indebtedness required for forbearance as set forth in this June 11th letter.

Defendants did not resolve their debt obligations under the Robb Note or the Timberland Note within the time period allowed in the foreclosure extension agreements. On June 30, 2010, Robb spoke with Boles and requested a one-week extension of the foreclosure sales. Robb alleges Boles said "he didn't see that it would be a problem since LNV Corporation had already agreed to the prior thirty day extension and one more week shouldn't be a problem." It is undisputed, however, Boles was not authorized to approve the one-week extension and would have to seek management approval. It is also undisputed Robb knew Boles was not authorized to grant the one-week extension. On July 1, 2010, Boles informed Robb that LNV would not agree to the additional one-week extension and the foreclosure sales would proceed as stated in the foreclosure extension agreements. Robb requested this additional week extension because he needed more time to get a loan from Larry Cooley, his business associate. Affidavits conflict on whether Cooley had agreed to loan Robb the money to pay off the Robb Note.

As set forth by the Timberland Extension Agreement, SMF conducted the foreclosure sale on the Timberland Deed of Trust on July 1, 2010. The Timberland Property was offered for sale as a whole and in parts. LNV was the high bidder at the foreclosure sale with a credit bid of $131,599.00. SMF also conducted the foreclosure sale on the Robb Deed of Trust on July 1, 2010. The Robb Property was also offered for sale as a whole and in parts. LNV was the high bidder at the foreclosure sale with a credit bid of $19,845.00. Finally, on July 6, 2010, SMF conducted the foreclosure sale on the Timberland 2 Deed of Trust. The Timberland 2 Property was also offered for sale as a whole and in parts. LNV was the high bidder at the foreclosure sale with a credit bid of $161,334.00. LNV purchased the Timberland 2 Property subject to a 2009 real estate tax bill totaling $4,956.64. On September 1, 2010, LNV paid the taxes owed on the Timberland 2 Property and charged it back to the Timberland Note as a "negative escrow" item.

Neither Robb nor anyone on his behalf appeared at any of these foreclosure sales. Neither Robb nor Timberland attempted to exercise their rights of redemption as to any of the three properties, or attempted to enjoin any of the foreclosure sales.

In its Motion for Summary Judgment (Doc. #41), LNV asserts the undisputed facts demonstrate Robb and Timberland are in default under the terms of the Robb Note, Timberland Note, and Robb Guaranty. LNV further asserts each of Defendants' affirmative defenses fails as a matter of law, such that there exists no genuine issue of material fact for trial and LNV is entitled to judgment as a matter of law. In their opposition to LNV's motion, Defendants Robb and Timberland assert the following, in an attempt to demonstrate the existence of a genuine issue of material fact precluding summary judgment: (1) LNV has not demonstrated a proper assignment from Columbian

to the FDIC and from the FDIC to LNV of the loan documents giving LNV the right to enforce the promissory notes; (2) LNV and its predecessor refused to accept partial payment of the obligations arising under the promissory notes after they matured on July 20, 2008; (3) LNV's claimed attorneys' fees and costs are excessive and unreasonable; and (4) LNV was unjustly enriched because the properties were sold at foreclosure for less than fair market value and then sold to third parties for excessive profit. Defendants also dispute LNV's calculation of any deficiency amount owed under the defaulted notes and insist the Court's analysis in this matter should consider the fair market values of the foreclosed properties.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). In reviewing a summary judgment motion, the Court must scrutinize the evidence in the light most favorable to the nonmoving party, according to the nonmoving party the benefit of every factual inference and resolving any doubts as to the existence of any material fact against the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The moving party bears the burden of presenting sufficient evidence that there is no genuine issue of material fact for trial and it is entitled to summary judgment as a matter of law. Celotex, 477 U.S. at 323. "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004) (citation omitted).

8

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

## DISCUSSION

### A. LNV IS ENTITLED TO SUMMARY JUDGMENT ON ITS SUBSTANTIVE CLAIMS.

Generally, Missouri law would govern the Court's analysis because the Court applies the substantive law of the forum state in which it sits when jurisdiction, as here, is based on diversity of citizenship. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under their terms, however, the Robb Note and the Timberland Note are governed by Kansas law. See Docs. #41-1, #41-4. This choice of law clause mandates only that Kansas law be used in construing the contract, not that Kansas is the forum where a suit arising from the contract must be filed. Bouquette v. Suggs, 928 S.W.2d 412, 414 (Mo. Ct. App. 1996) (holding a choice of law provision contained in promissory note stating Missouri law must be used in construing the contract did not mandate Missouri be the forum where the suit must be heard).

To recover on a promissory note, the lender must show: (a) execution and existence of the promissory note; (b) sufficient consideration to support the promissory note; (c) performance or willingness to perform in compliance with the promissory note;

9

and (d) defendant's breach. Student Loan Mktg. Ass'n v. Hollis, 121 P.3d 462, 465 (Kan. Ct. App. 2005).

Under its terms, the Robb Guaranty is also governed by Kansas law. See Doc. #41-7. To recover on a guaranty, the lender must show: (a) the promissory note was validly executed by the borrower; (b) the guarantor executed the guaranty in which the guarantor guaranteed payment of the note in favor of the lender; (c) the borrower has defaulted on the note; and (d) the amount due and owing under the note. Stokers, S.A. v. Roth, 887 F. Supp. 265, 268 (D. Kan. 1995). "When a guaranty is absolute, a default by a principal obligor matures the liability of a guarantor against whom a creditor may then proceed without first pursuing action against the primary obligor." Id. at 267.

The undisputed facts demonstrate the Robb Note and the Timberland Note were executed in favor of Columbian, the Notes were supported by sufficient consideration in the form of real property, the Robb Note evidenced a loan made to Robb from Columbian and the Timberland Note evidenced a loan made to Timberland from Columbian, and Robb defaulted on the Robb Note and Timberland defaulted on the Timberland Note. The record demonstrates LNV is entitled to enforce the loan documents as the holder. As a matter of law, LNV establishes an absence of material facts demonstrating it is entitled to judgment as a matter of law against Robb on the Robb Note and against Timberland on the Timberland Note.

Also, LNV establishes an absence of material facts demonstrating it is entitled to judgment as a matter of law against Robb under the Robb Guaranty. It is undisputed LNV demonstrates Timberland validly executed the Timberland Note, Robb executed the Robb Guaranty and guaranteed payment of the Note, and Timberland defaulted on the Timberland Note. The Court also finds LNV properly establishes the deficiency amount

due and owing under the Timberland Note; therefore LNV is entitled to judgment as a matter of law against Robb under the Robb Guaranty.

### B. LNV IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSES BECAUSE NONE OF DEFENDANTS' ARGUMENTS CREATE ANY GENUINE ISSUE OF MATERIAL FACT.

A mortgage or deed of trust is controlled by "the substantive as well as procedural law of the situs. . . ." Resolution Trust Corp. v. Atchity, 913 P.2d 162, 169-70 (Kan. 1996) (applying Missouri substantive law to the foreclosure sale where the collateral real estate was located in Missouri). Because the foreclosures giving rise to LNV's deficiency claims occurred in Missouri on property located in Missouri, Missouri law applies to evaluate the foreclosure. See Atchity, 913 P.2d at 172.

#### 1. LNV IS POSITIONED TO ENFORCE THE ORIGINAL LENDER'S RIGHTS UNDER THE LOAN DOCUMENTS.

In their opposition to LNV's motion (Doc. #47), Defendants argue LNV failed to properly prove an assignment of the relevant accounts from Columbian to the FDIC and from the FDIC to LNV. Defendants assert LNV would therefore be unable to show it was a holder of the loan documents with the right to enforce them. However, the record demonstrates no genuine issue of material fact with respect to these arguments.

It is undisputed that the Kansas State Banking Commissioner closed Columbian in August 2008 and appointed the FDIC as receiver for Columbian. See Doc. #80. No court can restrict the exercise of the FDIC's statutory receivership power. 12 U.S.C. § 1821(j). Further, the record reflects three separate Assignments of Deed of Trust with Future Advances and Future Obligations Governed by Section 443.055 RSMO from the FDIC as receiver for Columbian as grantor to LNV Corporation as grantee. See Docs. #41-8, #41-9, #41-10. Each deed of trust assignment included the legal description of one

11

of the three collateral properties at issue and expressly referenced the corresponding promissory note under which each property was collateral and the corresponding principal loan amount.

Under the assignments' express language, the FDIC, as the receiver, assigned to LNV any and all documents that evidenced the FDIC's right, title, or interest in and to the Robb Note and to the Timberland Note in conjunction with the assignments of the deeds of trust. The Court finds these public records demonstrate LNV is entitled to enforce both the Robb Note and the Timberland Note and there exists no remaining issue of material fact on this point.

### 2. LNV HAS NOT BEEN UNJUSTLY ENRICHED UNDER EXISTING MISSOURI LAW DICTATING THE DEFICIENCY CALCULATION.

Earlier in the pendency of this action, the Court permitted the parties to conduct discovery into the fair market values of the Robb Property, Timberland Property, and Timberland 2 Property on the date each property was foreclosed upon. In fact, since Plaintiff's Motion for Summary Judgment was filed, the parties have agreed on the fair market values of the Timberland Property and the Timberland 2 Property. See Doc. #80. Defendants insist the fair market values of the properties are relevant to the determination of the deficiency amount owed to LNV. More specifically, Defendants argue a genuine issue of material fact exists related to the fair market value of the Robb Property on July 1, 2010.

This case is a diversity action; thus, the Court is bound to apply Missouri law as declared by the Supreme Court of Missouri. E.g., Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). "Ordinarily, if the state's highest court has announced a rule, this Court is

12

bound to follow it." M & I & Ilsey Bank v. Sunrise Farms Development, LLC, 2012 WL 2522671, at *8 (W.D. Mo. June 28, 2012).

Under existing Missouri law, the issue of fair market value is not relevant to the calculation of the deficiency amount owed. See First Bank v. Fischer & Frichtel, Inc., 364 S.W.3d 216, 220-21 (Mo. banc 2012). The debt owed is calculated by subtracting from the debt the foreclosure sale price, not the fair market value of the real property being sold. Id. at 220. Under this approach, a debtor may not "attack the sufficiency of the foreclosure sale price *as part of the deficiency proceeding* even if the debtor believes that the foreclosure sale price was inadequate." Id. (emphasis in original). "A debtor who believes that the foreclosure sale price was inadequate can bring an action to void the foreclosure sale itself." Id. (citation omitted).

In this case, the original principal amount of $223,720.85, evidenced by the Timberland Note, is uncontroverted. Further, the parties agree the Timberland Note matured and all amounts became due and owing on July 20, 2008. It is also uncontroverted the fair market values of the Timberland Property and Timberland 2 Property were $350,000.00 and $200,000.00, respectively. See Doc. #80. Moreover, it is uncontroverted LNV was the high bidder at the foreclosure sales on these two properties and purchased the Timberland Property for a credit bid of $131,599.00 and the Timberland 2 Property for a credit bid of $161,334.00.

With respect to the Robb Note, the parties agree the loan principal was $162,500.00, which came due and owing on July 20, 2008. It is uncontroverted LNV purchased the Robb Property as the high bidder at the foreclosure sale with a credit bid of $19,845.00. The parties dispute the fair market value of the Robb Property. However, this dispute does not create a genuine issue of material fact that would preclude summary

13

judgment because under existing Missouri law, fair market value is not relevant to the calculation of the deficiency amount owed. See First Bank, 364 S.W.3d at 219.

Defendants urge the Court to reject existing Missouri law and adopt the approach suggested by the dissenting opinion in First Bank and the valuation method recommended by Restatement (Third) of Property (1997). Under this approach, damages in a deficiency action are measured by reference to the fair market value of the collateral property on the foreclosure date; thus, in the event a debtor challenges the sale price of the collateral property at the foreclosure sale, damages are calculated by the difference between the principal balance and the fair market value at the time of the foreclosure. Id. Though the Court allowed parties to conduct discovery with respect to the fair market value of the properties at issue in this case, the Court finds the fair market values of the three foreclosed properties is irrelevant to the determination of the deficiency amount owed to LNV. Nor does Defendants' assertion of LNV's unjust enrichment by selling the properties to a third-party for an excessive profit create an issue of material fact for trial, because the question of whether a foreclosure sale price was sufficient is improper as part of a deficiency proceeding.

Since the fair market values of the foreclosed properties are irrelevant to the calculation of the deficiency amount and the parties do not dispute the amounts evidenced by the promissory notes nor the purchase prices of the three properties at the foreclosure sales, there exists no genuine issue of material fact that would preclude summary judgment in favor of LNV.

### 3. LNV HAS PROPERLY CALCULATED THE DEFICIENCY OWED.

Defendants attempt to avoid summary judgment by disputing the damages calculation with respect to the default interest rate charged, LNV's failure to properly

14

credit payments made on the promissory notes, the FDIC's and LNV's failure to accept partial payment of the Notes, and the tax bill charged back to the principal amount under the Timberland Note. The Court finds Defendants arguments do not indicate the existence of a genuine issue of material fact that would preclude entry of judgment in favor of LNV as a matter of law. Missouri law dictates how the deficiency amount should be calculated and the record indicates what amounts are properly owed to LNV after considering interest, payments, late fees, and attorneys' fees. See Doc. #56. These additional charges were expressly authorized under the terms of the loan documents. See Docs. #41-1 & #41-4.

In its Reply suggestions to the summary judgment motion (Doc. #56), LNV lists the payments made under the Robb Note and Timberland Note. LNV's records are unclear with respect to whether one payment in the amount of $2,017.18 was properly credited to the Robb Note or Timberland Note. Plaintiff concedes "[i]n the event that LNV is granted summary judgment on all claims against the Defendants except for the single issue of whether the payment represented by Check # 001009 was properly credited, LNV will agree to reduce its claim against Defendants under the Timberland Note by $2,017.18." See Doc. #56 at 13, n. 6. Although there exists no genuine issue of material with respect to whether LNV properly accounted for payments made under the promissory notes and properly charged interest and fees back to Defendants, the Court finds the deficiency amount owed under the Timberland Note should be reduced by $2,017.18.

### 4. LNV'S CLAIMS FOR ATTORNEYS' FEES ARE REASONABLE.

"Any note . . . or other credit agreement may provide for the payment of reasonable costs of collection, including, but not limited to, court costs, [and] attorney

15

Case 4:11-cv-00842-BCW   Document 84   Filed 03/27/13   Page 15 of 17

fees. . . ." KAN. STAT. ANN. § 58-2312 (2012). The terms of the Notes at issue each provide "[b]orrower will be liable for all reasonable costs incurred in the collection of this Note, including but not limited to, court costs, attorneys' fees . . . ." Docs. #41-1, #41-4. Plaintiff's Amended Complaint, filed with leave of Court, includes a claim for attorneys' fees. See Doc. #66. Defendant disputes the reasonableness of the fees sought by Plaintiff, but concedes "it is in the sound discretion of the trial court to determine the reasonableness of fees sought." See Doc. #47 at 23. Though a question of reasonableness generally signals the existence of factual question requiring resolution at trial, based on Defendants concession and the express terms of the promissory notes related to reasonable attorneys' fees, the Court finds Defendants' argument does not create a genuine issue of material fact precluding summary judgment in LNV's favor.

## CONCLUSION

The Court has carefully considered the record and parties' briefs and finds no genuine issue of material fact remains in dispute and Plaintiff is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED Plaintiff's Motion for Summary Judgment (Doc. #41) is GRANTED. It is further

ORDERED judgment is entered against Defendant Robb as follows: $145,130.49 in principal, $39,710.83 in accrued unpaid interest, and $89.22 in late fees, totaling $184,930.54 plus future interest accruing at a rate of $54.42 per diem for obligations under the Robb Note; $9,077.15 in principal and $2,457.65 in accrued unpaid interest, less the conceded amount of $2,017.18, totaling $9,517.62, plus accruing interest at a rate of $3.40 per diem for obligations under the Robb Guaranty; and post-judgment interest at the highest rate permitted by law. It is further

16

ORDERED judgment is entered against Defendant Timberland as follows: $9,077.15 in principal and $2,457.65 in accrued unpaid interest, less the conceded amount of $2,017.18, totaling $9,517.62, plus accruing interest at a rate of $3.40 per diem for obligations under the Timberland Note; and post-judgment interest at the highest rate permitted by law. It is further

ORDERED judgment is entered against Defendants Robb and Timberland, jointly and severally, in the amount of $35,780.51 in reasonable attorneys' fees.

IT IS SO ORDERED.


DATED: <u>March 27, 2013</u>

<u>/s/ Brian C. Wimes</u>
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT